UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RYAN HURLEY, RICHARD CHASE, SCOTT MILLBURN, LYLE "SKIP" SORUM, and MICHAEL ZDAN,<br><br>Plaintiffs,<br><br>v.<br><br>HORIZON AIR INDUSTRIES, INC., a Washington corporation,<br><br>Defendant. | NO. C09-353RSL<br><br>ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |

## I. INTRODUCTION

This matter comes before the Court on plaintiffs' "Motion for a Temporary Restraining Order and Preliminary Injunctive Relief," Dkt. #2. Plaintiffs contend that issuance of a temporary restraining order ("TRO") and a preliminary injunction is essential to prevent defendant from interfering with their right to support the union of their choice. For the reasons set forth below, the Court denies plaintiffs' motion for a TRO and preliminary injunctive relief.

## II. DISCUSSION

**A. Background**

Plaintiffs are all aircraft mechanics employed by Horizon. Compl., Dkt. #1 at ¶¶ 5-9. Horizon mechanics and related employees are presently represented for collective bargaining

ORDER DENYING MOTION FOR
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION - 1

1  purposes by the Airline Mechanics Fraternal Association ("AMFA"). Id. ¶ 12. In 2008, several
2  employees contacted the International Brotherhood of Teamsters, Airline Division ("IBT") to
3  help them switch their representation to IBT, id., and on February 11, 2009, IBT filed an
4  application with the National Mediation Board ("NMB") requesting an election to determine
5  who should be the representative of the Horizon mechanics and related employees, id. ¶ 13. On
6  March 2, 2009, the NMB announced that IBT had submitted cards from more than 50% of
7  eligible employees and that, accordingly, it would conduct a representation election with IBT
8  and AMFA on the ballot. Id. ¶ 16. Employees will be able to vote over the Internet between
9  March 30 and April 20, 2009. Id.

On February 27, 2009, in response to a disruption that occurred after a flyer had been distributed in the workplace by IBT supporters, Decl. of Arthur E. Thomas ("Thomas Decl."), Dkt. #4, Attach. 2 at ¶ 3, Horizon senior management directed enforcement of a policy that allowed mechanics to wear only Carrier-issued apparel, Compl., Dkt. #1 at ¶ 14. They announced that employees could continue to wear Carrier-issued apparel that bore patches with the AMFA logo, approved by the company with respect to size, color and placement, pursuant to a clause in the Horizon-AMFA collective bargaining agreement that permits employees to wear such patches. Id. Horizon also directed that no union-related discussions take place on the work floor. Id. ¶ 15.

On March 2, 2009, IBT counsel Joshua McInerny wrote Arthur E. Thomas, Horizon Vice President for Legal and Labor matters, requesting that Horizon "immediately rescind" the rule prohibiting any IBT insignia from being worn by employees and the rule prohibiting employees from speaking about the union election while they are on the clock. Dkt. #2, Attach. 2 at Ex. 3. On March 3, Mr. Thomas responded that, "[t]o ensure work is carefully performed in the workplace and that employees are not distracted by campaign arguments, we require that the workplace be devoted to work during working time." Id. at Ex. 4. Mr. Thomas offered, "[i]n

the interest of maintaining balance," that employees could affix a similar IBT patch on individually purchased uniform items if they first proposed a patch design and had it approved by the company. Id. On March 4, Mr. McInerny wrote a letter "ask[ing] Horizon to reconsider its policy" and indicating that the IBT is "prepared to take immediate legal action to vindicate Horizon employees' rights" to express support for IBT. Id. at Ex. 5. On March 13, in response to allegations by both IBT and AMFA that Horizon was favoring one union over the other, Horizon announced that "we're just going to stick with the current collective bargaining agreement specifics that would apply to the display of union identification, IBT or AMFA, in work areas." Dkt. 4, Attach. 2 at Ex. I.

Plaintiffs subsequently filed the present motion for a TRO and preliminary injunctive relief to prohibit enforcement of Horizon's policies "banning union insignia on its property" and "banning all forms of speech about the union campaign while on company time," Compl., Dkt. #1 at 10. The Court held a hearing on the motion on March 23, 2009. Dkt. #8.

**B. Analysis**

To obtain a temporary restraining order under Federal Rule of Civil Procedure 65(b), a party must show "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." A party is entitled to preliminary injunctive relief when it demonstrates either "(1) a likelihood of success on the merits and a possibility of irreparable injury, or (2) the existence of serious questions on the merits and the balance of hardships tips sharply in its favor."[1] Fund for Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir. 1992).

---

[1] At the hearing, plaintiffs' counsel stated that he hoped to postpone the hearing on the preliminary injunction, but the Court found no reason to sever the two claims. Plaintiffs' counsel had filed a declaration stating that he had served the pleadings to defendant, Dkt. #2, Ex. 1 at ¶¶ 4-5, and the issue was fully briefed before the Court. Plaintiffs also agree that the standards for granting a TRO and a preliminary injunction require the same inquiry on the part of the Court. Dkt. # 2 at 5. Moreover, the

ORDER DENYING MOTION FOR
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION - 3

These are not separate tests, but rather represent a continuum of equitable discretion "in which the required degree of irreparable harm increases as the probability of success decreases," Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 874 (9th Cir. 2000).

     To demonstrate a likelihood of success on the merits of their claim that Horizon has interfered with their right to wear IBT paraphernalia, plaintiffs must first establish that the Railway Labor Act ("RLA") gives them the right to wear union insignia while at work. The Ninth Circuit held that "absent 'special considerations,' an employee has a right, protected by section 7 of the [National Labor Relations Act ("NLRA")], to wear union buttons and insignia at work." Pay'N Save Corporation v. NLRB, 641 F.2d 697, 700 (9th Cir. 1981) (quoting NLRB v. Essex Wire Corp., 245 F.2d 589, 593 (9th Cir. 1957)). "The NLRB has found such special considerations, justifying a prohibition on wearing union insignia, in cases where the insignia could exacerbate employee dissension, jeopardize employee safety, or damage machinery or products. The courts have recognized [as] additional 'special considerations' distraction from work demanding great concentration and a need to project a certain type of image to the public." Id. (internal citations and quotation marks omitted). In Skywest Pilots ALPA Organizing Committee v. Skywest Airlines, Inc., 2007 WL 1848678 (N.D. Cal. June 27, 2007), the district court concluded that "the RLA does not offer any *less* protection than the NLRA for employees attempting to organize a union," id. at *12 (emphasis in original), and therefore applied the same "special considerations" test to the plaintiff's RLA claim, id. The parties agree that "the Skywest decision provides guiding authority for this Court in considering plaintiffs' motion," Dkt. #4 at 2.

---

same urgency that prompted plaintiffs to file their motion before the upcoming election warrants prompt resolution of both the motion for a TRO and the motion for a preliminary injunction. Plaintiffs' counsel eventually agreed at the hearing to proceed on the preliminary injunction claim and to rely on the declarations submitted by both sides in lieu of live witness testimony.

ORDER DENYING MOTION FOR
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION - 4

Horizon contends that its safety concerns constitute appropriate "special considerations" under Skywest. Dkt. #4 at 2. According to Mr. Thomas, "[t]he mechanics are not permitted to wear on the work floor any pins or other items that might come off and fall into aircraft or engine parts, or that might fall on the floor and be sucked into engines upon ignition." Thomas Decl., Dkt. #4, Attach. 2 at ¶ 6. The potential for damage to the aircraft or engine parts implicates a serious safety concern for Horizon customers. Plaintiffs agree on this point; at the March 23, 2009 hearing, plaintiffs' counsel indicated that they do not object to Horizon's non-discriminatory prohibition on wearing union pins and buttons.

In fact, the March 23 hearing revealed that the parties actually agree on a policy that would allow union insignia on employee apparel without compromising safety or Horizon's right to "maintain discipline," Republic Aviation Corp. v. NLRB, 324 U.S. 793, 798 (1945), on company property. Contrary to plaintiffs' original assertion that Horizon has banned all IBT insignia on its property, see Compl., Dkt. #1 at 10, Horizon has agreed to permit employees to display IBT patches that meet the same specifications as the already-approved AMFA patches, see Thomas Decl., Dkt. #4, Attach. 2 at ¶ 15. Moreover, Horizon has indicated that employees are permitted to wear lanyards bearing union logos as long as they have a breakaway feature for safety. See Decl. of Celia Sherbeck ("Sherbeck Decl."), Dkt. #4, Attach. 3 at ¶ 7. At the hearing, the parties also agreed that IBT supporters may wear dark-colored union hats or caps that are substantially similar to the company's hats bearing the AMFA logo.[2]

Plaintiffs also argued in their reply brief that "all Teamster materials are systematically removed from [the workplace's 'general use' bulletin board] by management, even as AMFA continues to post its materials in a locked display case." Dkt. #6 at 2 n.2. However, at the

---

[2] Because Horizon aircraft mechanics occasionally work on the tarmac in plain view of Horizon passengers, the company has the right to prohibit employees from wearing hats or other paraphernalia that are unprofessional or distracting. Cf. NLRB v. Harrah's Club, 337 F.2d 177, 180 (9th Cir. 1964).

ORDER DENYING MOTION FOR
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION - 5

hearing Horizon asserted that the company has not removed any IBT materials from the bulletin board. It further noted that although AMFA does maintain a locked display case pursuant to its collective bargaining agreement, the company has prohibited AMFA from posting any campaign materials in that case. Plaintiffs agreed that this policy is a fair one.

In light of the many points of agreement between the parties, the Court finds no reason to restrain or enjoin any of Horizon's policies or practices regarding employee apparel or use of the company bulletin board.

The only remaining point of contention is the lawfulness of Horizon's policy banning all union-related discussion on the work floor. Horizon contends that it learned of "a disruption [that] had erupted among the mechanics on duty" during the night of February 25-26, 2009, "precipitated by a flyer distributed in the workplace by IBT supporters." Thomas Decl., Dkt. #4, Attach. 2 at ¶ 3. Horizon was "informed that a number of mechanics on the graveyard shift were so agitated by the allegations in the flier that angry shouting erupted, and very little work was accomplished during the shift." Id. Plaintiffs dispute that any disruption ever took place, Decl. of Lyle "Skip" Sorum, Dkt. #6, Attach. 3 at ¶ 3, and contend that even if it did the ban should be narrowly tailored to the offending flyer. However, as the Court indicated at the March 23 hearing, Horizon has a right to ban non-work-related discussion on the work floor that has given rise to tension and disputes when employees should be concentrating on the demands of their job. Regardless of the extent of the February 26, 2009 incident, Horizon is entitled to "anticipate such occurrences and avoid them" to protect the safe and efficient operation of its business, Harrah's Club, 337 F.2d at 180.

It is important to note that Horizon's policy only precludes union discussions on the work floor during work hours. See Republic Aviation, 324 U.S. at 803 n.10 (quoting Petyon Packing Co., Inc., 49 NLRB 828, 843 (1943)) ("Working time is for work. It is therefore within the province of an employer to promulgate and enforce a rule prohibiting union solicitation during

ORDER DENYING MOTION FOR
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION - 6

working hours."). Horizon employees are free to discuss union matters during breaks in break rooms. The Court certainly recognizes the importance of union-related speech on the job site. The "right to effectively communicate with one another regarding self-organization," Beth Israel Hosp. v. NLRB, 437 U.S. 483, 491 (1978), is guaranteed by the RLA, and the Court is wary of employer attempts to ban all such communication. Cf. NLRB v. Magnavox Co. of Tenn., 415 U.S. 322, 325-36 (1974) (banning of solicitation "by employees to employees" during "nonworking time . . . might seriously dilute [NLRA] rights"). But the Court finds that Horizon has provided appropriate avenues for union-related speech without allowing the ongoing debate to impinge upon worker productivity.

Although plaintiffs protest that the company has not similarly banned speaking on other non-business related matters, including their families, vacations, the weather and sports, Dkt. #2 at 4, the Court agrees with defendant that that type of small talk is less likely to interfere with employees' attention to detail, Sherbeck Decl. ¶ 6. Talk about the unions, on the other hand, has "become heated and disruptive." Id. Cf. Gerry's Cash Markets, Inc. v. NLRB, 602 F.2d 1021, 1025 (1st Cir. 1979) ("Even during working hours, Gerry's could not rigorously prohibit talk about union activity while winking at other activities or conversation *having substantially equal potential for interference with work*.") (emphasis added). An employer is well within its rights to ban conversation that is particularly contentious and emotionally charged while permitting more mundane conversation on the work floor. Indeed, it would hardly be a victory for Horizon employees if the Court were to adopt plaintiffs' all-or-nothing approach and require Horizon to ban all non-work-related discussion during work time. Therefore, the Court finds that Horizon is justified in prohibiting union-related discussion during work hours.

### III. CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for a TRO and preliminary injunctive relief (Dkt. #2) is DENIED.

ORDER DENYING MOTION FOR
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION - 7

1    DATED this 23rd day of March, 2009.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION FOR
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION - 8